# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ALEXANDER FRICKE,                           CASE NO. 1:10-cv-01030-LJO-SMS

                Plaintiff,

    v.                                                        FINDINGS AND RECOMMENDATIONS
                                      RECOMMENDING THAT THE COURT
                                      AFFIRM THE AGENCY'S DENIAL OF
                                      BENEFITS AND ORDER JUDGMENT
COMMISSIONER OF SOCIAL                      FOR THE COMMISSIONER
SECURITY,

                Defendant.

_____/

Plaintiff Alexander Fricke, by his attorneys, Milam Law Office, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following review of the record as a whole and applicable law, the undersigned recommends that the Court affirm the agency's determination to deny benefits to Plaintiff.

## I.      Administrative Record

### A.      Procedural History

Plaintiff was insured under the Act through December 31, 2006. On April 25, 2002, Plaintiff filed an application for disability insurance benefits, alleging disability beginning

1  September 19, 2000.   That claim was initially denied on September 18, 2002, and upon

2  reconsideration, on December 19, 2002.  Plaintiff appeared and testified at a hearing on

3  September 18, 2003.  On November 10, 2003, Administrative Law Judge Richard P. Laverdure

4  found that Plaintiff could perform his prior work as credit manager and denied Plaintiff's

5  application for benefits.  On February 22, 2006, this Court affirmed.

6       On April 24, 2006, Plaintiff filed the application for disability insurance benefits that is the

7  subject of this appeal.  He alleged disability beginning November 11, 2003.   His claim was

8  initially denied on August 23, 2006, and upon reconsideration on March 2, 2007.   Plaintiff

9  appeared and testified at a hearing on July 23, 2008.  On October 20, 2008, Administrative Law

10  Judge James P. Berry denied Plaintiff's application. The Appeals Council denied review on April

11  19, 2010.  Plaintiff filed a complaint in this Court on June 8, 2010.

12       **B.**     **Agency Record**

13       Plaintiff (born March 10, 1946) lives alone in his own home.  He completed three years of

14  college but did not receive a degree.  He is able to drive with no difficulties.  He has become

15  forgetful, forgetting to pay his bills and to take his medicine.  In his adult function report, Plaintiff

16  said he could pay attention for about 20 minutes.

17       Plaintiff worked for an aluminum and steel service center for thirty years.  In his last

18  position as a credit supervisor, Plaintiff approved credit and lines of credit for his employer's

19  customers, released orders, went to the bank, made bank deposits, and entered orders.  He was

20  required to carry office supplies, including heavy boxes of paper for the copier.  He did not

21  supervise others or hire or fire anyone.  According to his mental health record, Plaintiff's

22  employer demoted him to a position of assistant credit manager following a period of frequent

23  absences related to his illnesses.  In his application for disability benefits, Plaintiff reported that he

24  left his job because he was no longer able to do the work.

25       Plaintiff testified that he could no longer do his prior job because lower back pain and the

26  pain of his diabetic neuropathy reduced his concentration.  When he was awake, he experienced

27  pain in his hands about 80 per cent of the time.  Using his hands increased the pain.  According to

28  Plaintiff's testimony, diabetic neuropathy felt like "numbness and needles sticking in my feet."

1 AR 33. His back pain was "constant like a spasm type of pain in the back." AR 34. Laying down
2 and medication were both effective in relieving his pain. Plaintiff took one pain pill daily.

3      Plaintiff testified that he could sit for an hour and a half at a time for a total of two and a
4 half hours a day. He required a cane but could stand about a half an hour at a time for a total of
5 two hours a day. He lay down about twice a day to relieve the pain and pressure in his back. He
6 could lift no more than eight pounds.

7      Plaintiff also testified that he had problems with depression and anxiety attacks. He
8 participated in weekly mental health treatment until the county discontinued group therapy
9 following budget cuts. Plaintiff had difficulty sleeping and used a CPAP machine for sleep apnea.

10      Despite his limitations, Plaintiff testified that he was able to do "minor yard work," such
11 as clipping bushes, although he made slow progress. For example, when clipping bushes, he
12 worked for five or ten minutes, rested ten minutes, then worked for five minutes more. He
13 cleaned his own home, dusting twice a week and vacuuming once a week. In his adult function
14 report, Plaintiff noted that he mowed the lawn for 45 minutes weekly, did laundry for an hour
15 weekly, and repaired sprinklers, as needed, for about one-half hour.

16      Plaintiff had a girlfriend, Leta Schantz, who had assisted in his living expenses by
17 securing a loan against the equity in his home. He and his girlfriend went to the movies, although
18 Plaintiff had difficulty sitting through the whole show. Plaintiff also liked to go to the mall, sit
19 down, and watch people.

20      On an ordinary day, Plaintiff cooked his own meals, generally using a microwave, watched
21 television, laid down, and talked to friends. He generally used disposable plates. Plaintiff cared
22 for his pet bird, a parrot named "Polly." He reported some difficulty dressing himself and holding
23 onto the soap when he showered.

24      **Third-party function report.** Ms. Schantz reported that Plaintiff had sleep apnea and
25 constant pain in his legs and feet. He needed reminders to take his insulin injections.

26      Pain and loss of strength in his hands impaired his ability to use buttons. Because
27 depression and pain reduced his energy level, Plaintiff need encouragement and motivation to
28 perform his house and yard work. According to Schantz, Plaintiff did his own laundry, sprinkler

1    repair, cleaning, and lawn mowing "out of necessity."  AR 162.  He prepared his own sandwiches,

2    salads, and frozen dinners.  Plaintiff could handle his own financial affairs in all respects.

3         Plaintiff went outside about twice a day.  Although pain and diabetic neuropathy limited

4    his mobility, Plaintiff was able to drive. He shopped for groceries and clothes.  He and Schantz

5    went out for four to five hours at a time to "eat out" or see a show.

6         According to Schantz, Plaintiff could lift five to ten pounds, stand ten to fifteen minutes,

7    sit about 30 minutes, walk about 200 feet, and climb about five stairs.  He had limited bending

8    and loss of strength in his hands.  His vertigo limited his concentration.  Plaintiff used a cane but

9    it was not prescribed by a doctor.

10        **Kaiser Permanente.**  The administrative record includes medical records of Plaintiff's

11   treatment at Kaiser Permanente from November 1, 2003 to June 1, 2006.  He received treatment

12   for diabetes without retinopathy, high cholestrol, a single episode of depression, and chronic pain,

13   as well as acute symptoms unrelated to his disability claim.  Plaintiff declined psychotherapy,

14   claiming inability to pay the co-pay.  The record does not include an opinion from any Kaiser

15   physician regarding Plaintiff's residual functional capacity.

16        **Dr. Garnica.**  William Garnica, M.D., treated Plaintiff from December 23, 2005 to May

17   31, 2005.  These medical records are handwritten and largely illegible.  Plaintiff declined lab tests,

18   claiming inability to pay.  Dr. Garnica diagnosed and treated anxiety, depression, diabetes, gum

19   disease, hypertension, neuralgia, and diabetic neuropathy.  Garnica did not offer an opinion on

20   Plaintiff's residual functional capacity.

21        **Dr. Klein.**  Internist Adi Klein, M.D., examined Plaintiff and offered his opinion as a

22   consultant for the agency.  Klein reviewed no medical records and depended on Plaintiff's account

23   of his medical history.  Plaintiff reported diabetes with numbness in his feet but no laser eye

24   treatment or emergency room visits in the past year.  He had long-term back pain with x-rays

25   showing disk disease.  Plaintiff had sleep apnea and used CPAP.  Plaintiff's severe vertigo had

26   continued since it was diagnosed in December 2005.  He used a cane for the vertigo.  Medications

27   included NovoLog, Lyrica, Cymbalta, Nasonex, Vitoran, and Actos.

28   ///

4

1        Other than reduced back flexion (45/90), a ganglion cyst on his right wrist and mildly

2  reduced right-hand grip (4/5), Klein reported that Plaintiff's physical examination was normal.

3  The sensory test revealed decreased sensation in Plaintiff's feet, likely due to his diabetes.

4        Plaintiff's gait was slow and steady.  Plaintiff was able to cross the room without

5  assistance, and get on and off the examining table without difficulty.  Squatting and rising was

6  within normal limits.  Klein's reports of Plaintiff's ability to walk heel-to-toe were contradictory.

7  Klein opined:

> At this time, due to obesity, vertigo, neuropathy and back pain, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can walk and stand two hours in a six-hour workday, with appropriate breaks.  He can sit six hours in an eight-hour workday.  There are no postural, manipulative, visual, or communicative limitations.  No provision for height, age, or gender has been made.

11        Special limitations: No heights or machinery.

12        AR 228.

13      **Agency physician.**  Applying *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988), agency

14  physician D.D. Sharbaugh adopted the Judge Laverdure's 2002 decision.  Accordingly, he opined

15  that Plaintiff could lift ten pounds occasionally and frequently; stand or walk at least two hours in

16  an eight-hour work day; and sit about six hours in an eight-hour work day.  In addition, Plaintiff's

17  fine manipulation ability was limited.

18      **Dr. Engeln.**  Psychologist Richard Engeln, Ph.D., prepared a psychological evaluation as a

19  consultant to the agency.  After interviewing Plaintiff and administering intelligence and other

20  psychological tests, Engeln opined, "On the present interview [Plaintiff] presented with no

21  evidence of any mental or emotional illness."  AR 238.  He added:

> Verbally, cognitively, and socially [Plaintiff] is capable of job adjustment in a context where instructions are multidimensional and independence is demanded.  Restrictions to job adjustment are primarily medical-physical issues per se.

24        AR 238.

25      **Agency psychologist.**  A.H. Middleton determined Plaintiff to have an affective disorder

26  that was not severe.  He opined that Plaintiff had mild restrictions of activities of daily living, in

27  maintaining social functioning, and in maintaining concentration, persistence, or pace.  Plaintiff

28  demonstrated no repeated episodes of decompensation of extended duration.

**Fresno County Mental Health.** The record includes notes from Plaintiff's participation in group therapy provided by Fresno County Mental Health (FCMH) in 2005 and 2006. Plaintiff was not assigned a supervising psychiatrist.

Plaintiff's depression and anxiety were attributed to health and financial issues. Plaintiff reported that he was unable to receive general assistance because of the value of his home. His anger and disappointment at his failure to secure social security disability payments is mentioned in multiple reports. The counselors encouraged Plaintiff to sell his home and secure less expensive housing, which would free home equity to pay his living expenses.

**Vocational expert.** Thomas Dachelet testified as vocational expert. He characterized Plaintiff's work as a credit manager as sedentary, SVP 8, and very skilled. Plaintiff's prior "moonlighting" work as a night club security guard, or bouncer, was light, SVP 3. Dachelet opined that, if Plaintiff was capable of performing sedentary work, he was able to perform his prior work as a credit manager. Although Plaintiff's skills would be transferable, Plaintiff, who had spent his entire career working for a metal manufacturer, might require additional training to transfer to another employer, which might have different needs.

For the first hypothetical question, the ALJ directed Dachelet to assume a hypothetical 62-year-old individual, with some college and past relevant experience as a credit manager for a metal manufacturer. The individual had a combination of severe impairments, but retained the residual functional capacity to lift and carry ten pounds frequently and occasionally; to stand and walk for two hours each; and to sit six hours. He must avoid exposure to unprotected heights and dangerous machinery. Dachelet opined that such an individual could perform Plaintiff's past work.

For the second hypothetical question, the ALJ directed Dachelet to assume an individual who had a combination of severe impairments, but retained the residual functional capacity to lift and carry a maximum of eight pounds; to stand for a total of two hours. and to sit for a total of two and a half hours. The individual would require a cane and would need to lie down twice daily to rest. He must elevate his feet and would have difficulty maintaining concentration. Noting that ///

these limitations provided for a four-and-a-half-hour work day, Dachelet opined that such an
individual could not perform Plaintiff's past work or any other work.

**II.      Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in
substantial gainful activity because of a medically determinable physical or mental impairment
which has lasted or can be expected to last for a continuous period of not less than twelve months.
42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of
such severity that he or she is not only unable to do his or her previous work, but cannot,
considering age, education, and work experience, engage in any other substantial gainful work
existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated
regulations prescribing a five-step sequential process for evaluating an alleged disability.  20
C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following
questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

In addition, when an applicant has one or more previous denials of applications for
disability benefits, he or she must overcome a presumption of nondisability.  The principles of *res
judicata* apply to administrative decisions, although the doctrine is less rigidly applied to

1  administrative proceedings than in court.  *Chavez*, 844 F.2d at 693; *Gregory v. Bowen*, 844 F.2d

2  664, 666 (9th Cir. 1988).  Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting

3  *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period

4  arising under the same title of the Social Security Act as a prior claim in which there has been a

5  final administrative decision that the claimant is not disabled.  A previous final determination of

6  nondisability creates a presumption of continuing nondisability in the unadjudicated period.

7  *Lester*, 81 F.3d at 827.  The presumption may be overcome by a showing of changed

8  circumstances, such as new and material changes to the claimant's RFC, age, education, or work

9  experience.  *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

10      **2003 Decision.**  Judge Laverdure found that Plaintiff had not engaged in substantial

11  gainful activity since the alleged onset date of September 19, 2000.  His severe impairments were

12  diabetes mellitus and low back pain.   Neither impairment met or equaled the requirements of a

13  listed impairment.  Plaintiff retained the residual functional capacity to perform sedentary work

14  with frequent fingering and feeling bilaterally.  Plaintiff was able to perform his past relevant

15  work as a credit manager.

16      **2008 Decision.**  Judge Berry found that Plaintiff had not engaged in substantial gainful

17  activity since the alleged onset date of November 11, 2003.  His severe impairments were diabetes

18  mellitus and allergies.   Neither impairment met or equaled the requirements of a listed

19  impairment.

20      Plaintiff retained the residual functional capacity to lift ten pounds occasionally and up to

21  ten pounds frequently; to both stand and walk for two hours in an 8-hour work day; and to sit for

22  six hours in and eight-hour work day.  Plaintiff needed to avoid hazards such as unprotected

23  heights and dangerous moving machinery.  Plaintiff had no mental limitations.  Specifically,

24  despite his impairment, Plaintiff was able to perform his past relevant work as a credit manager.

25  **III.    Scope of Review**

26      Congress has provided a limited scope of judicial review of the Commissioner's decision

27  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

28  a court must determine whether substantial evidence supports the Commissioner's decision.  42

8

1   U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,

2   402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

3   1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept

4   as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must

5   be considered, weighing both the evidence that supports and the evidence that detracts from the

6   Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

7   evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g.,*

8   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's

9   determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if

10  the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and*

11  *Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

12  **IV.    Application of *Chavez* Presumption**

13          Plaintiff contends that the ALJ erred in applying the *Chavez* presumption of nondisability

14  since he had entered a new age category and his residual functional capacity had worsened.  The

15  Commissioner counters that Judge Berry did not base his decision on *Chavez*, but performed the

16  full five-step analysis of Plaintiff's application without reliance on *Chavez*.  But if the *Chavaz* is

17  applied, argues the Commissioner, Plaintiff failed to demonstrate any change in circumstances.

18          The Court agrees with the Commissioner.  As summarized above, the ALJ determined that

19  Plaintiff was not disabled under the regulations by applying the five-step analysis outlined in

20  *Lester*, 81 F.3d at 828 n. 5.  As such, the ALJ's determination did not rest on the *Chavez*

21  presumption.  But even if it had, Plaintiff fails to establish any change in circumstances that would

22  have overcome the presumption.

23          Because attainment of advanced age may change the outcome of the disability analysis

24  when the ALJ employs the medical-vocational grids, attainment of advanced age may constitute

25  changed circumstances precluding application of *res judicata* to the earlier determination.

26  *Chavez*, 844 F.2d at 693.  Accordingly, the *Chavez* Court found changed circumstances in

27  Chavez's having reached his 55th birthday, moving from the category of "closely approaching

28  advanced age" to "advanced age."  *Id.* While it is true that Plaintiff became older between the

earlier (57 years old) and the later proceedings (62 years old), in both instances, he was categorized as being of advanced age (55 years old or older).  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200 (f).  Accordingly, assuming that the grids applied, the change in age had no change on effect in determining whether Plaintiff was disabled.

Although Plaintiff asserts that his residual functional capacity had diminished since the 1982 hearing decision, he introduced no evidence of such a change.  The only new opinion of Plaintiff's residual functional capacity, which was provided by agency consultant Adi Klein, M.D., indicated that Plaintiff's physical abilities had increased from sedentary to light.  Had the ALJ applied the *Chavez* presumption, he would not have erred.

**V.     Credibility**

   **A.     Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly found Plaintiff's testimony not to be credible.  The Commissioner disagrees, arguing that the ALJ's analysis was appropriate.

The ALJ concluded that although Plaintiff's underlying physical or mental impairments could reasonably be expected to produce pain and other symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of his impairments were not credible for twelve specific reasons:

First, the analysis of the claimant's non severe mental and physical impairments, supra, is incorporated by reference herein.  Second, the objective medical evidence does not show pathology reasonably likely to cause the debilitating symptoms alleged.  Third, on July 12, 2006, Dr. Klein reported that the claimant can lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk to two hours in an 8-hour work day with appropriate breaks, and sit for six hours in an 8-hour work day, but is precluded from heights or machinery.  Fourth, the claimant's treatment has been routine or conservative in nature.  Fifth, the record reflects some gaps in treatment, further indicating that the claimant's symptoms and limitations have not been as serious as has been alleged in connection with this application and appeal.  Sixth, on July 12, 2006, Dr. Klein reported that no assistive aid is required for ambulation across the room.  Seventh, the claimant has no evidence of end organ damage.  Eighth, the claimant is not taking medications of a type and dosage consistent with his allegations.  Ninth, the record does not indicate that the claimant suffers debilitating side effects from his medication.  Tenth, no treating or examining physician has opined that the claimant is totally and permanently disabled from all work.  Eleventh, the claimant was able to participate in the administrative hearing and respond to the questioning without apparent difficulties.

///

1  Twelfth, concerning his activities of daily living, the claimant has described daily
   activities which are not limited to the extent one would expect, given the
2  complaints of disabling symptoms and limitations.

3     AR 16-17.

4        Ultimately, the ALJ concluded that the objective medical evidence and Plaintiff's admitted

5  ability to do ordinary tasks supported a finding that Plaintiff retained the ability to perform

6  sedentary work.

7        "An ALJ cannot be required to believe every allegation of disabling pain, or else disability

8  benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).

9  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Section 423(d)(5)(A) provides that a

10 individual's testimony of pain or other symptoms is not sufficient to establish disability, but that

11 the claimant must provide "[o]bjective medical evidence of pain or other symptoms which may

12 reasonably be expected to produce the pain or other symptoms alleged and which, when

13 considered with all evidence required to be furnished under this paragraph (including statements

14 of the individual or his physician as to the intensity and persistence of such pain or other

15 symptoms which may reasonably be accepted as consistent with the medical signs and findings),

16 would lead to a conclusion that the individual is under a disability."  This principal "holds true

17 even where the claimant introduces medical evidence showing that he has an ailment reasonably

18 expected to produce *some* pain; many medical conditions produce pain not severe enough to

19 preclude gainful employment."  *Fair*, 885 F.2d at 603.

20       If he or she decides to reject a claimant's pain testimony after a medical impairment has

21 been established, the ALJ must make specific findings assessing the credibility of the claimant's

22 subjective complaints.  *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738

23 (9th Cir. 1991).  *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  "[T]he ALJ must

24 identify what testimony is not credible and what evidence undermines the claimant's complaints."

25 *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581,

26 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining

27 why the testimony is unpersuasive.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).  *See also*

28 *Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility

1  findings must be "sufficiently specific to permit the court to conclude that the ALJ did not

2  arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

3  2002).  If the ALJ's finding is supported by substantial evidence, the Court may not second-guess

4  his or her decision.  *Id.* at 959.

5        Although the ALJ's written opinion was inartful, it sufficiently explained the his reasons

6  for discounting Plaintiff's credibility and was supported by substantial evidence.  By contrasting

7  Plaintiff's claim that he was totally disabled against objective medical evidence and Plaintiff's

8  own testimony of his daily activities, the ALJ properly did his job.  *See Fair*, 885 F.2d at 903

9  ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other

10  activities that involve many of the same physical tasks as a particular type of job, it would not be

11  farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from

12  working.").  No medical testimony in the record supported Plaintiff's contention that he could not

13  work.  Plaintiff did not produce the opinion of any treating physician.  Dr. Klein, the examining

14  physician, opined that Plaintiff was generally able to perform light work, and the non-examining

15  agency physician applied the *Chavez* presumption and concluded that Plaintiff was capable of

16  sedentary work.

17        With regard to reason 3, the Court declines to accept Plaintiff's argument that it reject

18  Klein's opinion because Klein did not review Plaintiff's medical records.  Klein relied on

19  Plaintiff's own account of his medical history, which, as set forth in Klein's opinion, was

20  reasonably accurate.  Klein's examination, based as it was on objective measurements and

21  observations, did not require more detailed medical records.  In his submissions to the agency,

22  Plaintiff presented no contradictory medical opinion of his residual functional capacity.

23  "Rejection of an uncontradicted medical opinion requires a statement of 'clear and convincing'

24  reasons." *Barbato v. Commissioner of Social Security Admin.*, 923 F.Supp. 1273, 1276 n. 1 (C.D.

25  Cal. 1996), *quoting Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  Plaintiff failed to

26  establish any clear and convincing reasons to disregard Klein's opinion.

27        Plaintiff argues that the minimal and conservative treatment noted in reasons 4 and 8

28  reflected his inability to afford treatment, not the severity of his impairments.  The facts of

1   Plaintiff's situation are not consistent with the cases on which he relies.  In *Gamble v. Chater*, 68

2   F.3d 319, 322 (9th Cir. 1995), the claimant's leg had been amputated below the knee.  As the

3   stump shrunk, the claimant required a replacement prosthesis but had no way of obtaining the

4   funds needed to purchase it.  *Id.* at 320.  The ALJ rejected the claimant's SSI application,

5   contending that his inability to purchase a new prosthesis was immaterial to the determination of

6   whether the claimant satisfied the requirement of a listed impairment that he was unable to

7   satisfactorily use a prosthesis.  *Id.*  The Ninth Circuit reversed, citing numerous cases holding that

8   an otherwise remedial condition is disabling if the claimant cannot afford remediation.  *Id.* at 320-

9   321.

10          The evidence in this case does not indicate that the conservative nature of Plaintiff's

11   treatment, any gaps in Plaintiff's treatment, or the type and dosage of Plaintiff's medications

12   reflected Plaintiff's inability to afford treatment.  No evidence in the record suggested that

13   Plaintiff was foregoing remedial treatment because he was impoverished. The record revealed

14   only two instances in which Plaintiff claimed an inability to afford treatment.  On one occasion,

15   Plaintiff declined psychotherapy at Kaiser Permanente, claiming he could not afford the co-

16   payments.  He later secured mental health treatment from Fresno County Mental Health.  On the

17   other occasion, Plaintiff told Dr. Garnica that he could not afford lab tests.  But the notes of the

18   FCMH therapists noted that Plaintiff was ineligible for public assistance because of the amount of

19   home equity he possessed and that Plaintiff recognized that he could adequately support himself if

20   he sold his home and secured more affordable housing.  Plaintiff elected to retain his home,

21   borrowing against it to meet his living expenses.  In his testimony and disability statements, he

22   disclosed such activities as going to movies and dining out.  That Plaintiff has remained

23   unemployed through he extended course of his two applications for disability benefits has

24   certainly limited his finances, but the record does not support Plaintiff's after-the-fact claim that

25   the conservative nature of his treatment was dictated by limited finances.

26          Plaintiff rejects as "irrelevant" the ALJ's consideration in reason 6 that Plaintiff himself

27   elected to walk with a cane even though no physician prescribed it.  In his recitation of Plaintiff's

28   medical history, Dr. Klein reported that Plaintiff reported that he used his cane for vertigo.  In the

report of his examination, Klein observed, "No assistive device is required for ambulation across the room."  AR 228.  Plaintiff's medical records do not indicate that Plaintiff's cane was prescribed by a physician; and, as the ALJ found (AR 15), Schantz confirmed that the cane had not been prescribed by a doctor.  AR 166.  Thus, substantial evidence supported the ALJ's conclusion that by using an unprescribed cane, Plaintiff exaggerated his impairment beyond the objective medical assessments of the physicians offering opinions in this case.

In a confusing paragraph addressing the ALJ's tenth reason, Plaintiff asserts that the failure of a treating or examining physician to find him "totally and permanently disabled" is irrelevant to his credibility and that "totally and permanently disabled" is the incorrect standard for determining disability.  Although the ALJ's language is sloppy, the statement does not examine whether Plaintiff is disabled but is intended to contrast Plaintiff's self-representation with the objective evidence in the record to illustrate the ALJ's conclusion that Plaintiff was not fully credible.  In context, the ALJ's choice of words is harmless.

The balance of Plaintiff's opposition to reason 10 is legally inaccurate.  Plaintiff states that "he does not allege that he is totally and permanently disabled from all work," arguing that pursuant to 20 C.F.R. § 404, Subpart P, App. II, §§ 201.06 and 202.06, he is deemed disabled even if he can perform the full range of light and sedentary work.  *See* Doc. 17 at 24.  Both § 201.06 (addressing those claimants limited to sedentary work) and § 202.06 (addressing those claimants limited to light work) apply only to claimants whose skills are not transferable.  In this case, Dachelet opined that Plaintiff's skills were transferable, even though he might require some specific additional training relevant to a new employer.  If the "grids" were to be applied in this case, the proper sections (§§ 201.07 and 202.07) would indicate that Plaintiff is not disabled.

Plaintiff objects that reason 11 is impermissible "sit and squirm jurisprudence."  "The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."  *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984).  Accordingly, in *Gallant*, the ALJ erred in relying on the insubstantial evidence claimant's demeanor at the hearing instead of relying on unanimous medical opinions that the claimant's

14

condition was a source of constant pain. *Id.* at 1456. "Denial of benefits cannot be based on the ALJ's observation of [the claimant], when [the claimant's] statements to the contrary . . . are supported by objective evidence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). In this case, however, Plaintiff's claimed impairments were not supported by the objective evidence, which indicated without contradiction that Plaintiff was capable of sedentary or light work. As a result, any error in the ALJ's observation that Plaintiff's appearance at the hearing was consistent with the medical evidence was harmless.

Finally, Plaintiff contends that "nothing about Plaintiff's activities of daily living . . . is inconsistent with his alleged limitations." Doc. 17 at 26. To the contrary, Plaintiff himself testified to his ability to mow his lawn, perform other yard maintenance, clean his house, eat out, go to movies, and go to the mall to watch people. He remained able to concentrate, follow directions, and manage his financial affairs. Substantial evidence supported the ALJ's assessment that Plaintiff's testimony regarding the extent of his limitations was not fully credible.

### B.    Credibility of Leta Schantz

Plaintiff contends that the ALJ also erred in discounting the "testimony" of Plaintiff's girlfriend, Leta Schantz, and in characterizing her as an untrained witness whose evaluation of Plaintiff was likely to be partial to Plaintiff. (Schantz did not testify at the hearing but submitted a third-party disability report.) The ALJ opined:

> Ms. Leta Schantz's report does not establish that the claimant is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the intensity of unusual moods or mannerisms, the accuracy of her report is questionable. Moreover, by virtue of the relationship as the claimant's girlfriend, Ms. Schantz cannot be considered a disinterested third party witness whose report would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations he alleges. *Most importantly, significant weight cannot be given to Ms. Schantz's report because it, like the claimant's reports and testimony, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.*

AR 17 (*citations to agency record omitted; emphasis added*).

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless he ultimately determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467

1   (9th Cir. 1996), *quoting Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  *See also Bayliss v.*

2   *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Friends and family members who are in a position

3   to observe the claimant's symptoms and daily activities are competent to testify about their

4   observations of the claimant's condition.  *Dodrill*, 12 F.3d at 918-19.  An ALJ's disregard of the

5   testimony of friends and family members violates the regulations, which provide for consideration

6   of the observations of non-medical sources regarding the effects of the claimant's impairments on

7   his ability to work.  *Id., citing* 20 C.F.R. § 404.1513(e)(2).[1]  *See also Sprague v. Bowen*, 812 F.2d

8   1226, 1232 (9th Cir. 1987).  When a claimant alleges symptoms that are not supported by medical

9   evidence in the record, the agency directs the adjudicator to obtain information about those

10  symptoms from third parties likely to have such knowledge.  SSR 88-13.  The ALJ must give "full

11  consideration" to such testimony.  *Id.*  Nonetheless, the ALJ may reject testimony that is not

12  supported by substantial evidence.

13      Judge Berry's discussion of Schantz's likely predisposition to favor Plaintiff's application

14  merely states the obvious.  A close observation of Schantz's responses to the questionnaire (AR

15  160-167) reveals that, whether or not she had the ability to make detailed, exacting observations,

16  she did not do so.  Ms. Schantz's interaction with Plaintiff consisted of four-to-five-hour outings

17  to eat in a restaurant or see a movie.  She reported that she did not know what Plaintiff did all day;

18  how long it took him to cook his meals; whether Plaintiff's cooking habits had changed since the

19  onset of his impairments; how long it took him to do laundry, repair sprinklers, clean, or mow the

20  lawn; why Plaintiff did not do house or yard work; how long he shopped for groceries and clothes;

21  or how long Plaintiff could pay attention.  She opined that he only did laundry, sprinkler repair,

22  cleaning, and lawn mowing "out of necessity."

23      Ms. Schantz reported that Plaintiff was able to live alone, without help, in his own home.

24  He was able to handle all aspects of his financial affairs; his ability to do so had not changed since

25  the onset of his impairments.  He watched televison and read the paper daily.  Plaintiff followed

26  ///

27

28

---

[1]  The relevant section is now designated 20 C.F.R. § 404.1513(d)(4).

both written and spoken instructions well and got along well with authority figures, although he was less able to handle stress and changes in routine since his illness.

Ms. Schantz's response to the form's questions regarding Plaintiff's symptoms and abilities is remarkably consistent with Plaintiff's own disability report, suggesting to this Court that the two documents were likely prepared in consultation. Ms. Schantz's kind and empathetic remarks (AR 167) reflected her personal experiences with similar impairments as well as her knowledge of the experiences of third parties, rather than focusing on Plaintiff's specific impairments and experiences.

By her own admission, Ms. Schantz was not in a position to testify about the interaction of Plaintiff's symptoms and daily activities outside of their movie and dinner dates. Her reports of Plaintiff's functional impairments appeared to have been derived directly from Plaintiff's own disability report. And, to the extent that Schantz's report revealed that Plaintiff was capable of nearly all activities of daily living, it was not substantial evidence supporting a finding that Plaintiff was disabled. The ALJ did not err in rejecting Schantz's report.

## C. Credibility of FCMH Therapists

Plaintiff contends that the ALJ erred in failing to consider the opinions of two licensed clinical social workers, Patricia Lometti and Rose Ornela, and of licensed marriage and family therapist Carol Grainger. These individuals prepared notes of Plaintiff's participation in group therapy at FCMH, which are included in the record at AR 257-333. As the Commissioner points out, the treatment notes do not include assessments of Plaintiff's functional limitations but simply document Plaintiff's participation in each group therapy session. The record includes no opinion from any of these therapists regarding Plaintiff's residual functional capacity.

The ALJ found that Plaintiff's depression was not a severe impairment:

The evidence reflects that the claimant has alleged depression as a severe impairment. On August 3, 2006, Dr. Richard Engeln reported that Plaintiff presented with no evidence of any mental or emotional illness. Dr. Engeln further reported that verbally, cognitively, and socially, the claimant was capable of job adjustment in a context where instructions were multidimensional and independence was demanded. State agency psychologist, Dr. A.H. Middleton, determined that Plaintiff has a non severe mental impairment. Moreover, the claimant's acknowledged activities of daily living do not support his depression as a severe impairment.

17

1    Accordingly, it is hereby found that the claimant's mental impairment results in the
     claimant experiencing only mild restrictions of the activities of daily living; mild
2    difficulties in maintaining social functioning; mild difficulties in maintaining
     concentration, persistence, or pace; and no episodes of decompensation
3    (exacerbation or temporary increase in symptoms or signs accompanied by a loss
     of adaptive functioning).  Furthermore, the evidence does not establish the
4    presence of the "C" criteria of the Listing of Impairments in 20 C.F.R., Part 404,
     Subpart P, Appendix I.  The claimant's only mental impairment is therefore
5    nonsevere and imposes no limitations on his ability to work.

6    AR 15.

7    Acceptable medical sources include licensed physicians and licensed or certified

8    psychologists, as well as licensed optometrists, licensed podiatrists, and qualified speech-language

9    pathologists when their opinions are relevant to the claimant's disability.  20 C.F.R. §§

10   404.1513(a); 416.913(a).  The Commissioner **may** also use evidence from other non-medical

11   sources to show the severity of the claimant's impairment(s) and the impairments' effect on the

12   claimant's ability to work.  20 C.F.R. § 404.1513(d)(4); 416.913(d)(4) (*emphasis added*).  The

13   regulations do not recognize as acceptable medical sources licensed clinical social workers or

14   marriage and family therapists.  *See* Revised Medical Criteria for Evaluating Mental Disorders

15   and Traumatic Brain Injury, 65 Fed.Reg. 50746-01 (August 21, 2000) (noting that social workers

16   are not included among appropriate medical sources, although information provided by social

17   workers as "other sources" may be valuable in determining the existence of a claimant's mental

18   impairment).

19   The regulations did not require the ALJ to use the treatment notes of licensed clinical

20   social workers, Patricia Lometti and Rose Ornela, and of licensed marriage and family therapist

21   Carol Grainger.  In any event, the treatment notes prepared by these therapists included no

22   assessment of any functional limitations relating to Plaintiff's claim of mild depression.  The ALJ

23   did not err by failing to discuss the treatment notes.

24   **V.    Incorrect Categorization of Plaintiff's Past Relevant Work**

25   Plaintiff contends that the ALJ erred in accepting the vocational expert's opinion that

26   Plaintiff could perform his former work as credit manager because Plaintiff's job responsibilities

27   in that position did not correspond to the job responsibilities of the listing on which the vocational

28   expert relied: Manager, Credit and Collection DOT Code 169.167-086.  Because Plaintiff's

former position did not include the supervisory component of the listing, Plaintiff contends that the vocational expert failed to properly analyze whether or not he could perform his former job. The Commissioner responds that any error was harmless.

When a claimant has not been determined eligible for disability benefits during the first three steps of the analysis, the agency will analyze the physical and mental requirements of Plaintiff's prior position to determine whether he can perform that work in light of his residual functional capacity. 20 C.F.R. § 404.1560 (a) and (b). In performing its analysis, the agency may use the services of a vocational expert to "offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560 (b)(2). "In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." *Id.*

At the 2008 hearing, Plaintiff testified that as credit manager for American Metals, he approved credit, released orders, went to the bank to make deposits, and entered orders, AR 26-27. He did not supervise anyone else. AR 27. Dachelet listened to Plaintiff's testimony, consulted related materials, and testified that he had sufficient information to form an opinion of the type of work Plaintiff had performed. AR 43. "[I]f he can do sedentary work," said Dachelet, "he can do past relevant work." AR 45. Dachelet cautioned that the critical issue was transferability and vocational adjustment since the same job performed for different employers would concern different materials, different agencies, different operating procedures, and a different environment. AR 45. The ALJ then presented his first hypothetical question, which presented an individual with the same residual functional capacity as Plaintiff, based on the medical opinions in the record. Dachelet opined that such a person could perform Plaintiff's past work. Although Dachelet characterized Plaintiff's work as a credit manager as sedentary, SVP 8, and very skilled, at no point in his testimony did he refer to a specific occupational listing.

1  Plaintiff's attorney neither objected to Dachelet's characterization nor asked any questions of
2  Dachelet.

3       Similarly, in the hearing decision, Judge Berry never mentioned Manager, Credit and
4  Collection DOT Code 169.167-086 either. The ALJ simply characterized Plaintiff's credit
5  manager position as "semi-skilled, sedentary level work."  AR 17.   He repeatedly referred to
6  Plaintiff ability to perform the job of a credit manager at a *sedentary level*, noting "Social Security
7  Ruling 82-61 provides that an individual will be found 'not disabled' when it is determined that
8  he retains the residual functional capacity to perform the actual functional demands and duties of a
9  particular past relevant job, or the functional demands and job duties of the occupation as
10 generally required by employers throughout the national economy *at the sedentary level*."  AR 18
11 ((*emphasis added*).

12      The exertional level is key.  Both the ALJ and the vocational expert analyzed Plaintiff
13 prior work as a credit manager, as Plaintiff had described it in his testimony, to have been
14 performed at the sedentary level, which was therefore within Plaintiff's residual functional
15 capacity.  Neither the ALJ nor the vocational expert sought to require Plaintiff to perform at a skill
16 level above his education or experience.  The ALJ did not err in concluding that Plaintiff could
17 perform his prior work art a sedentary level.

18 **VI.    Summary and Recommendation**

19      A review of applicable law and facts indicates that the ALJ applied appropriate legal
20 standards and that substantial credible evidence supported the ALJ's determination that Plaintiff
21 was not disabled.  Accordingly, the undersigned recommends that the District Court affirm the
22 Commissioner's determination.

23      These Findings and Recommendations will be submitted to the Honorable Lawrence J.
24 O'Neill, United States District Judge, pursuant to the provisions of 28 U.S.C § 636(b)(1).  On or
25 before May 18, 2012, Plaintiff may file written objections with the Court.  The document should
26 be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is
27 ///
28 ///

advised that, by failing to file objections within the specified time, he may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    April 18, 2012**                                **/s/ Sandra M. Snyder**
                                                UNITED STATES MAGISTRATE JUDGE